## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JERRY JAMGOTCHIAN and ERIC REED

   Plaintiffs,

  v.

STATE HORSE RACING COMMISSION;
THOMAS CHUCKAS, JR., in his official
capacity as Bureau Director, Thoroughbred
Racing; RUSSELL C. REDDING, in his
official capacity as Chairman, State
(Pennsylvania) Horse Racing Commission;
and SALVATORE M. DeBUNDA, RUSSELL
B. JONES, JR., DR. CORRINE SWEENEY,
THOMAS JAY ELLIS, C. EDWARD
ROGERS, JR., MICHELE C. RUDDY, DR.
JOHN EGLOFF, ROBERT F. LARK, and
DARRYL BRENISER, in their official
capacities as Commissioners, State
(Pennsylvania) Horse Racing Commission,

   Defendants.

**1:16-cv-2035**

**Hon. John E. Jones III**

## MEMORANDUM

**August 29, 2017**

   Presently before the Court are cross motions for summary judgment. (Docs. 18, 20). Plaintiffs brought this action claiming that 58 Pa. Code §163.255 ("Rule 163.255") violates the dormant Commerce Clause and seeking declaratory and injunctive relief. The constitutionality of Rule 163.255 is a matter of first impression before this Court. For the reasons explained below, we will deny

Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

## I.    FACTUAL BACKGROUND

The facts of this case are uncomplicated and undisputed. They arise against the backdrop of claiming races – a common practice in the world of thoroughbred horse racing. In a claiming race, each horse in a given race is available to be purchased (or "claimed") for a price posted before the race. Each horse in a single race will post for roughly the same price, which dissuades owners from entering strong horses to compete against a weaker field or risk losing a good horse for less than it is worth. This "leveling" of the field helps to ensure interesting, competitive races and fosters greater excitement for the local horse racing market. Through claiming races, owners have an effective way of buying and selling horses while racetracks enjoy a consistent stable of horses to race. More races of better quality leads to higher gambling revenues and a stronger industry. Pennsylvania, among other states, has implemented rules to regulate claiming races, including Rule 163.255, which is the subject of this lawsuit. Rule 163.255, as we will more fully discuss later, establishes what is known as "claiming jail," which is a temporary limitation on where owners may race newly claimed horses.

Plaintiffs' challenge to Rule 163.255 begins with Plaintiff Jamgotchian's participation in claiming races at Presque Isle Downs near Erie, Pennsylvania. On

August 29, 2016, Plaintiff Jamgotchian claimed the horse Super Humor for $25,000 at Presque Isle Downs. (Doc. 21, ¶ 6). Plaintiff Jamgotchian requested a claiming jail waiver pursuant to Rule 163.255 on September 1, 2016, which the Pennsylvania Horse Racing Commission (PHRC or Commission) granted. (Doc. 19, ¶9; Doc. 21, ¶ 7). The following week, on September 8, 2016, Plaintiff Jamgotchian claimed the horse Tiz a Sweep for $25,000 in a claiming race at Presque Isle Downs and requested a claiming jail waiver. (Doc. 19, ¶ 10; Doc. 21, ¶¶ 9, 10). The PHRC informed Plaintiff Jamgotchian that they were reviewing the waiver request. (Doc. 19, ¶ 11; Doc. 21, ¶11). In October 2016, after the claiming period had ended, Defendant Chuckas notified Plaintiff Jamgotchian that the waiver request was moot because Rule 163.255 no longer applied. (Doc. 19, ¶ 11; Doc. 21, ¶ 11).

The issue before the court is whether Rule 163.255 violates the dormant Commerce Clause.

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a three-count Complaint on October 7, 2016. (Doc. 1). Plaintiffs sought declaratory judgment and injunctive relief in Counts I and II, claiming that Rule 163.255 violates the dormant Commerce Clause. Count III seeks injunctive relief under 42 U.S.C. §1983 for violating the dormant Commerce Clause and "depriv[ing] Plaintiffs of the rights, privileges, and

immunities secured to them by the Constitution and laws of the United States."
(Doc. 1). Following discovery, Defendants filed a Motion for Summary Judgment
and a Statement of Facts on May 1, 2017. (Docs. 18, 19). The same day, Plaintiffs
also filed a Motion for Summary Judgment and a Statement of Facts. (Docs. 20,
21). Both sides filed supporting briefs on May 15, 2017. (Docs. 25, 26). The
parties then filed answers to the opposing side's statement of facts, (Docs. 28, 31),
and opposition briefs on June 5, 2017. (Docs. 29, 30). On June 19, 2017, the
parties filed their reply briefs. (Docs. 32, 33). Having been fully briefed, the
Motions are ripe for our review.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a
sufficient evidentiary basis for a reasonable jury to find for the non-moving party,
and a fact is "material" only if it might affect the outcome of the action under the
governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162,
172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986)).  A court should view the facts in the light most favorable to the non-
moving party, drawing all reasonable inferences therefrom, and should not
evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt*

*Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

# IV. ANALYSIS

This case turns on the constitutionality of Rule 163.255, which states:

> *If a horse is claimed, it may not* be sold or transferred to anyone wholly or in part, except in a claiming race, for a period of 30 days from the date of claim, nor may it, unless reclaimed, remain in the same stable or under the control or management of its former owner or trainer for a like period, nor may it *race elsewhere until after the close of the meeting at which it was claimed*. The Commission has the authority to waive this section upon application and demonstration that the waiver is in the best interest of horse racing in this Commonwealth.

58 Pa. Code §163.255 (emphasis added). Plaintiffs are challenging the emphasized portions, which impose what is known as a "claiming jail" period. The parties agree on all material facts but disagree on whether the claiming jail provision of Rule 163.255 violates the dormant Commerce Clause (or other theories of unconstitutionality advanced by Plaintiffs) by preventing owners from racing claimed horses out of state during the claiming jail period. We will resolve both Motions in this Memorandum and Order. Before discussing the constitutionality of Rule 163.255, however, we first address two preliminary questions raised separately by the parties: (1) whether Plaintiffs have standing to bring their claims, and (2) whether Defendants are "persons" under 42 U.S.C. §1983, which pertains to Count III of the Complaint.

### 1.    Plaintiffs' Standing to Bring Claim

Defendants argue that Plaintiffs lack standing to challenge Rule 163.255 as applied, but do not contest Plaintiffs' standing for a facial challenge. (Doc. 29, p. 4-5). A facial challenge asserts that "the law is unconstitutional in every application, including" a plaintiff's, while an as-applied challenge contends that "the law cannot be constitutionally applied to [plaintiffs] due to some particular set of facts or circumstances." *Knick v. Township of Scott*, 862 F.3d 310, 320 (3d Cir. 2017). Plaintiffs do not explicitly state whether they intended to bring a facial or an as-applied challenge to Rule 163.255; however, the Complaint and Plaintiffs' briefs point to a facial challenge. Plaintiffs claim that Rule 163.255 is unconstitutional because it prevents *every* owner or trainer from racing a claimed horse out of state during the claiming jail period. Plaintiffs frequently refer to the unconstitutionality of Rule 163.255 under its "plain terms" and as generally enforced. Plaintiffs' language, therefore, indicates primarily a facial challenge.

While Defendants do not argue against Plaintiffs' standing to bring a facial challenge, the question of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," and we must, therefore, satisfy ourselves that Plaintiffs may bring this suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires three elements: "(1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2)

causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010). "[O]n summary judgment, 'the plaintiff cannot rely on mere allegations but must set forth by affidavit or other evidence specific facts' demonstrating that these requirements have been met." *Id.* (quoting *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 175 (3d Cir. 2001)).

An injury in fact must be "'a palpable and distinct harm' that, even if 'widely shared,' 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Toll Bros., Inc. v. Twp. Of Readington*, 555 F.3d 131, 138 (3d Cir. 2009)). With respect to the causation element, "'[t]he plaintiff must establish that the defendant's challenged actions, not the actions of some third party, caused the plaintiff's injury, [which] need not be as close as the proximate causation needed to succeed on the merits of a tort claim.'" *Id.* (quoting *Toll Bros.*, 555 F.3d at 138). "[T]he redressability prong 'looks forward' to determine whether 'the injury will be redressed by a favorable decision.'" *Id.* (quoting *Toll Bros.*, 555 F.3d at 138)). "'Redressability is not a demand for mathematical certainty,' but it does require 'a substantial likelihood' that the injury in fact can be remedied by a judicial decision.'" *Id.* (quoting *Toll Bros.*, 555 F.3d at 143).

In *Freeman*, the Third Circuit reviewed a challenge to New Jersey liquor laws that prevented plaintiffs, as wine collectors and consumers, from purchasing certain vintages from out of state. *Id.* at 152. The Third Circuit found that the Freemans were "directly constrained" by the liquor laws. *Id.* at 154. "Moreover, although the Freemans are 'not in the business of selling alcoholic beverages and therefore could not violate' the other statutory provisions at issue 'if they tried,' 'cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates.'" *Id.* at 154-55 (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997)). "Rather, 'customers of that class may also be injured.'" *Id.* at 155 (quoting *Gen. Motors Corp.*, 519 U.S. at 286).

Plaintiffs' circumstances are similar to those in *Freeman*. Plaintiffs allege they are participants in, and consumers of, the interstate horse racing market. If Rule 163.255 discriminates against out-of-state racetracks, then Plaintiffs are "directly constrained" as relevant consumers and are therefore injured by the discriminatory law. Regarding causation, "The question … is not whether the [law] is unconstitutionally discriminatory, but rather whether, be it even-handed and constitutional or not, it is causally connected to plaintiffs' injury in fact." *Id.* at 155. If Rule 163.255 prevents Plaintiffs from racing claimed horses out of state, then the Rule is the actual and proximate cause of Plaintiffs' injury. Plaintiffs'

claimed injury stems directly from that regulatory limitation. Finally, regarding redressability, "[t]he same evidence that demonstrates causation suffices … to demonstrate redressability." *Id.* at 156. Removing the restrictions of Rule 163.255 would eliminate the alleged injury. We therefore find that Plaintiffs have pled sufficient facts to establish standing.

### 2. Defendants' Status as "Persons" Under 42 U.S.C. §1983

Defendants argue that they cannot be sued under 42 U.S.C. §1983 because state agencies and state officials, in their official capacities, do not constitute "persons" under §1983.[1] The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). With respect to state officials, however, the Court clarified in a footnote, "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71, n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)). A state, however, "cannot be sued directly in its own name regardless of the relief sought." *Kentucky*, 473 U.S. at 167, n. 14. Furthermore, "'[W]here an agency is so structured that, as a practical matter, if the

---

[1] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" 42 U.S.C. §1983.

agency is to survive, a judgment must expend itself against state treasuries [i.e., an 'arm' of the state], common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency.'" *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994) (quoting *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 227 (D.C. Cir. 1986)).

In the case before us, the Commission has been construed as "a statutorily created arm of the state." *Peterson v. Com., Pa. State Horse Racing Comm'n*, 449 A.2d 774, 778 (Pa. Commw. Ct. 1982). *See also*, *Jiminez v. Lakelands Racing Ass'n, Inc.*, 567 F.Supp. 1298, 1301 (W.D. Pa. 1983) ("The statutory scheme indicates that the Commission operates as an arm of the Commonwealth and thereby shares the Commonwealth's immunity from suit in Federal Court."). Under the prevailing view, therefore, Plaintiffs' suit against the Commission itself is barred by sovereign immunity. Plaintiffs' claims for injunctive relief against the individual Defendants in their official capacities, on the other hand, would not be treated as an action against Pennsylvania and are permissible.

### 3.  Dormant Commerce Clause

We turn now to the central legal dispute in both Motions – whether Rule 163.255 violates the dormant Commerce Clause. The dormant Commerce Clause is the court-made "negative implication" of Congress's Commerce Clause power

under the United States Constitution.[2] *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008). The courts primarily have been concerned with state regulations that "'benefit in-state economic interests by burdening out-of-state competitors,'" or so-called "'economic protectionism.'" *Id.* at 337-38 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)). "Discriminatory laws motivated by 'simple economic protectionism' are subject to a 'virtually *per se* rule of invalidity.'" *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)). The first step, therefore, in a dormant Commerce Clause analysis is determining whether Rule 163.255 is discriminatory.

As noted earlier, Rule 163.255 provides, in part, "If a horse is claimed, it may not … race elsewhere until after the close of the meeting at which it was claimed." 58 Pa. Code §163.255. Plaintiffs argue that the claiming jail period is motivated by economic protectionism. A plain reading of the Rule in its entirety, however, casts doubt on Plaintiffs' argument. Rule 163.255 regulates when a claimed horse may be sold, where it should be stabled, and where it may race during a certain period of time after being claimed. None of these restrictions is indefinite. On its face, Rule 163.255 appears to contemplate a "cooling off" period after a horse is claimed that would ensure a smooth transition from one owner and

---

[2] "The Congress shall have power … to regulate commerce … among the several states." U.S. Const. art. I, §8, cl. 3.

trainer to another. Furthermore, Rule 163.255 explicitly provides a means for obtaining a waiver from its restrictions if a waiver would be in the best interest of horse racing in Pennsylvania. Logically, if economic protectionism is the driving force behind the claiming jail period, then a waiver that would allow a horse to be raced elsewhere is insensible. Yet the record demonstrates that Defendants granted three waivers in the past two years, including a waiver to Plaintiffs. (Doc. 33-3, p. 7).

In his Declaration, Defendant Chuckas provides an additional motive for Rule 163.255 that is unrelated to economic protectionism. Defendant Chuckas states that Pennsylvania's horse racing industry, and claiming races in particular, depends on a reliable pool of horses available for races. (Doc. 19-1, ¶8). Rule 163.255 furthers the stability of claiming races by preventing owners, absent a waiver, from immediately removing newly claimed horses. (*Id.* at ¶9). Rule 163.255 does not distinguish between in-state tracks and out-of-state tracks. The Rule states that a claimed horse may not "race elsewhere" during the claiming jail period. The plain language of the Rule indicates that the prohibition attaches to *any* other track, whether in-state or out-of-state, unless permitted by waiver. Additionally, the race-location restriction is only as long as necessary – the duration of the meeting period – and only with regard to the horses participating in the claiming races. Once the meeting period concludes, claimed horses may race

anywhere. Likewise, horses acquired in Pennsylvania through some means other than claiming races are not similarly restricted. The claiming jail provision, in short, is consistent with Defendants' stated purpose of stabilizing claiming races and upholding the integrity of horse racing in Pennsylvania.

Even facially neutral laws, however, can have the "effect of eliminating a competitive advantage possessed by out-of-state firms." *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 211 (3d Cir. 2002). On this point, Plaintiffs have failed to demonstrate any reduction or elimination of competitive advantage by out-of-state tracks. We note that Pennsylvania is not the only state with a similar rule. Defendants assert that over half of the states have similar rules on claiming races. (Doc. 29, p. 10). Pennsylvania racetracks are thus in the same competitive position as any other state's racetracks with similar rules. Plaintiffs argue that "the negative effects of interstate commerce resulting where numerous states have adopted economic protectionist laws in a tit for tat process is precisely what the dormant commerce clause is designed to preclude," and cite to several Supreme Court cases addressing state liquor laws. (Doc. 33, p. 13) (citing *Healy v. Beer Inst.*, 491 U.S. 324, 339-40 (1989); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 583-84 (1986)). Both cases cited by Plaintiffs center on beer price affirmation statutes. In *Healy*, Connecticut's price affirmation statute required out-of-state shippers to affirm that their prices were no

higher than prices in border states at the time when in-state shippers posted their prices. *Healy*, 491 U.S. at 328. Similarly, in *Brown-Forman Distillers*, New York law required any distiller or agent that filed a pricing schedule to include an affirmation that the price to wholesalers was not higher than the lowest price at which the same liquor could be sold in any other state. *Brown-Forman Distillers*, 476 U.S. at 576.

The facts of the aforesaid cases, however, do not reasonably compare to the facts before us. The statutes at issue in the cited cases are clear examples of discriminatory economic protectionism. They reflect an interest by Connecticut and New York in ensuring that their consumers are not paying more for beverage alcohol than consumers in other states. Furthermore, both laws are seeming attempts at regulating out-of-state businesses, which is not present here. To reiterate, Plaintiffs have failed to demonstrate that the motive behind Rule 163.255 is economic protectionism. As discussed, Rule 163.255 imposes a temporary limitation on where a claimed horse may race, which itself can be waived upon application to the Commission. Under Rule 163.255, claimed horses are not permitted to race at *any* other track during the meeting period, including the other two racetracks in Pennsylvania. Plaintiffs present several instances of claimed horses racing at other Pennsylvania tracks during the claiming jail period. However, a failure to apply penalties under Rule 163.255 does not render the rule

discriminatory or economically protectionist. We therefore find that Rule 163.255 is facially neutral, and Plaintiffs have not shown any elimination or reduction of economic advantages for out-of-state tracks to the benefit of in-state tracks.

In the absence of discrimination, "Where [a] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* Defendants have argued that this less demanding standard, known as the *Pike* test, applies not only because Rule 163.255 is not discriminatory, but also because the rule falls within the "government function" exception to the dormant Commerce Clause. We agree that the *Pike* test applies, but not because the rule is within the "government function" exception.

The "government function" exception applies where "State and local governments … provide public goods and services on their own [and], unlike private businesses, are 'vested with the responsibility of protecting the health, safety, and welfare of [their] children,' and laws favoring such States and their

subdivisions may 'be directed toward any number of legitimate goals unrelated to protectionism.'" *Davis*, 553 U.S. at 340 (quoting *United Haulers Ass'n*, 550 U.S. at 343). The Supreme Court articulated this exception in *United Haulers* and *Davis*.

*United Haulers* involved a publicly created authority to handle the processing, sorting, and disposition of solid waste. *United Haulers Ass'n*, 550 U.S. at 335. Although private haulers were still permitted to collect trash, all solid waste was to be routed through the public authority. *Id.* The Court distinguished the facts from its earlier decision in *C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383 (1994), which involved a similar ordinance benefiting a *private* processing facility, rather than a *public* facility. While the Court struck down the ordinance in *Carbone* as violating the dormant Commerce Clause, the Court in *Haulers* upheld the ordinance benefiting the public authority. *Id.* at 345. The Court reasoned that

> treating public and private entities the same under the
> dormant Commerce Clause would lead to unprecedented
> and unbounded interference by the courts with state and
> local government. The dormant Commerce Clause is not
> a roving license for federal courts to decide what
> activities are appropriate for state and local government
> to undertake, and what activities must be the province of
> private market competition.

*Id.* at 343. The following year, the Court decided *Davis* and upheld a Kentucky state law that exempted interest on its own bonds from state income tax, while taxing interest on bonds from other states. *Davis*, 553 U.S. at 341. The Court noted that "a fundamental element of dormant Commerce Clause jurisprudence [is] the

principle that 'any notion of discrimination assumes a comparison of substantially similar entities.'" *Id.* at 342 (quoting *United Haulers*, 550 U.S. at 342). Therefore, there was "no forbidden discrimination because Kentucky, as a public entity, does not have to treat itself as being 'substantially similar' to other bond issuers in the market." *Id.* at 343.

The activities at issue do not fit within the parameters defined by *United Haulers* and *Davis*. Pennsylvania regulates horse racing but does not own or operate racetracks, nor does it buy or sell horses through claiming races. Defendants argue that the regulation itself is a traditional government activity, but that does not give rise to a government function exception. As the Supreme Court of Kentucky aptly pointed out in a case similar to our own,

> regulation (or taxation) by itself cannot be what the Supreme Court meant in *United Haulers* by the phrase "traditional government function," because if it were then *United Haulers* would obliterate, not establish, a Commerce Clause distinction between private enterprise and government function – the government "regulates" in both instances – and would call into question every case in which a regulation has been invalidated under the sort of strict scrutiny frequently applied to regulations that discriminate against interstate commerce.

*Jamgotchian v. Ky. Horse Racing Comm'n*, 488 S.W.3d 594, 610 (2016). We agree with the Kentucky Court's analysis. Suggesting that regulation itself triggers the government function exception essentially negates the central purpose of the dormant Commerce Clause. State regulation of interstate commerce is precisely

what gave rise to the dormant Commerce Clause. We therefore find that the government function exception does not apply. However, we still find that Rule 163.255 should be analyzed pursuant to the *Pike* test.

As previously discussed, the *Pike* test states that a facially neutral law, with only an incidental impact on interstate commerce, will be upheld unless the burden placed on commerce is excessive in relation to the local benefits. *Pike*, 397 U.S. at 142. Again, Plaintiffs have not demonstrated any burden on out-of-state tracks. In fact, nothing in the record indicates that tracks in other states are affected by Rule 163.255. Plaintiffs attempt to amplify their burden by arguing a hypothetical scenario in which an owner claims a horse early in the claiming period and is not granted a waiver. However, even in that scenario, the claiming jail period is only a matter of months. In addition, Plaintiffs' actual burden in this case has been relatively minor. Plaintiffs received a waiver for Super Humor that permitted them to race the horse anywhere, and the limitation on Tiz A Sweep only lasted for approximately one month before it expired. Rule 163.255 does not require that owners acquire horses through claiming races, allows for a waiver of the rule's restrictions, and serves to protect the integrity of claiming races by ensuring they have a consistent pool of horses. The burden on commerce, if any, is incidental and reasonably restrained to benefit the local horse racing industry. We therefore find

that, under the *Pike* test, Rule 163.255 is not excessively burdensome on commerce in relation to the local benefit and, therefore, must be upheld.

### 4.    Unconstitutional Conditions

Within their dormant Commerce Clause argument, Plaintiffs claim that Rule 163.255 imposes an unconstitutional condition on their right to engage in interstate commerce. The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S.Ct. 2586, 2594 (2013). The United States Supreme Court has recognized this doctrine for several decades. As the Court stated in *Perry v. Sindermann*,

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 … Such interference with constitutional rights is impermissible.
>
> We have applied this general principle to denials of tax exemptions, unemployment benefits, and welfare payments. But, most often, we have applied the principle to denials of public employment.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (internal citations omitted).

Subsequent to the *Perry* decision, the Court also applied the doctrine to the right to

travel, *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), and the Fifth

Amendment right to just compensation for property taken by the government. *See*

*Nolan v. California Coastal Comm'n*, 483 U.S. 825 (1987); *Dolan v. City of*

*Tigard*, 512 U.S. 374 (1994); and *Koontz*.

Into this mix of cases, Plaintiffs hope to place the matter before us. Plaintiffs

argue that Pennsylvania's scheme of permitting owners to acquire horses through

claiming races only if they forego their right to engage in interstate commerce is an

unconstitutional condition. In addressing this issue, we can assume that interstate

commerce is at least an implicit constitutional right. The Commerce Clause

empowers Congress to regulate interstate commerce, which of course assumes that

interstate commerce is afoot. The question, therefore, is whether Rule 163.255

"coerces" Plaintiffs into giving up that right. We find that Rule 163.255 does not

have such an effect.

The unconstitutional conditions doctrine has been applied to instances in

which individuals seek to obtain benefits of some form from the government – tax

exemptions, public employment, welfare benefits, or land-use permits – but have

been blocked from obtaining those benefits unless they essentially waive certain

constitutional rights. In the present matter, Plaintiffs have not been forced to waive

their right to interstate commerce.[3] Rule 163.255 does not require owners who claim horses in claiming races to *only* race those horses at Pennsylvania tracks *in perpetuity*. Instead, Rule 163.255 temporarily attaches a claimed horse to its claiming season unless its owner obtains a waiver expressly provided for in the Rule. The facts before us do not approach the type of constitutional violations over which the Supreme Court previously expressed concern. Therefore, we find that Rule 163.255 does not impose an unconstitutional condition on Plaintiffs' right to engage in interstate commerce.

### 5. Invalidity of Unenforced Rules

Finally, Plaintiffs argue that Rule 163.255 should be invalidated because Defendants have not enforced it. Plaintiffs' argument hearkens back to the ancient, yet largely disfavored, doctrine of desuetude. "Desuetude is a civil law doctrine rendering a statute abrogated by reason of its long and continued non-use." *U.S. v. Elliott*, 266 F.Supp. 318, 325 (S.D.N.Y. 1967). Traditionally, desuetude has been raised as a defense to the sudden enforcement of a statute that had a long history of nonuse. This was particularly a concern in criminal prosecutions, as prosecution for a previously unenforced crime raised questions of fair notice and due process. *See U.S. v. Jones*, 347 F.Supp.2d 626, 628 (E.D. Wis. 2004) ("Although originally

---

[3] In fact, Plaintiffs, as out-of-state residents, engaged in interstate commerce by purchasing a horse in a claiming race in Pennsylvania. Plaintiffs appear to be arguing, therefore, that Rule 163.255 allows interstate commerce only if participants waive their right to engage in interstate commerce.

a civil law doctrine, courts have acknowledged that a desuetudinal statute could present 'serious problems of fair notice' in a criminal case." (quoting *Elliott*, 266 F.Supp. at 326)). "A desuetudinal statute also contains the potential for abuse that rests in any over-broad administrative discretion; its selective enforcement raises equal protection problems." *Elliott*, 266 F.Supp. at 326. There is some question, however, about whether this doctrine is even still in use among American courts.[4]

With the facts before us, we do not need to determine the continued validity of the doctrine because, even if desuetude is still a viable legal theory, we find that it would not apply to the present matter. First, Rule 163.255 has not been in a state of nonuse simply because Defendants have not imposed penalties on violators. Defendants have continued to issue waivers under the Rule as recently as 2016. Second, the fairness and equal protection concerns underlying the doctrine are not present here. Plaintiffs were not unaware of the Rule and unexpectedly faced with penalties as a result. Plaintiffs, in fact, possessed enough awareness of the Rule to request a waiver for both Super Humor and Tiz A Sweep. In addition, the Rule has not been selectively enforced, which could implicate equal protection concerns. In sum, the doctrine of desuetude does not apply to the facts presented. Therefore, we decline to abrogate Rule 163.255 on this basis.

---

[4] "What of those American jurisdictions that have accepted the doctrine? Little effort is needed to canvass the relevant case law, given that West Virginia alone recognizes desuetude as a valid defense. … Earlier decisions in other state courts recognizing the doctrine have been overturned, leaving West Virginia as an outlier in this field." Note, *Desuetude*, 119 Harv. L. Rev. 2209 (2006).

## V.    CONCLUSION

For the foregoing reasons, we shall deny Plaintiffs' Motion for Summary Judgment, (Doc. 20), and grant Defendants' Motion for Summary Judgment (Doc. 18). A separate order shall issue in accordance with this ruling.